UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>           Plaintiff,<br><br>v.<br><br>KENNETH W. ALEXANDER II, ROBERT D. WELSH, and CAEDRYNN E. CONNER,<br><br>           Defendants. | Civil Action No. 4:25-cv-446 |

**PLAINTIFF'S STATUS REPORT AND UNOPPOSED MOTION FOR ALTERNATIVE SERVICE AND EXTENSION OF TIME TO EFFECT SERVICE OF PROCESS ON DEFENDANT KENNETH W. ALEXANDER II**

Pursuant to the Court's July 29, 2025 Order (Doc. 12), Plaintiff Securities and Exchange Commission ("SEC") files this Status Report, and pursuant to Federal Rules of Civil Procedure 4(e)(1) and 4(m), the SEC files this Unopposed Motion for Alternative Service and Extension of Time to Effect Service of Process on Defendant Kenneth W. Alexander II ("Alexander"), and respectfully shows the following:

**Introduction**

The SEC seeks authorization for alternative service of process on Alexander. The SEC has made diligent efforts to serve Alexander personally with the summons and complaint. The SEC retained a professional process server that employed surveillance, extensive research, and other techniques to locate Alexander and attempted to serve him at nine locations in three states over more than five months. All efforts to personally serve Alexander—who, upon information and belief, is evading service—have been unsuccessful to date.

The SEC therefore requests that the Court authorize it to serve Alexander by alternative means. The SEC requests to serve Alexander by emailing the summons and complaint to two of Alexander's email addresses that are currently active. This alternative method of service is authorized by law and likely to provide Alexander actual notice of this lawsuit.

The SEC also seeks an extension of time to serve Alexander. Should the Court grant the SEC's motion for alternative service, the SEC requests that the Court grant it an additional period of 10 days from the date of its ruling to serve Alexander by email. Alternatively, should the Court deny the SEC's motion for alternative service, the SEC requests that the Court grant it an additional period of 90 days from the date of its ruling to continue its efforts to locate and personally serve Alexander.

### Status Report Regarding the SEC's Efforts to Locate and Serve Alexander

The SEC filed its complaint in this matter on April 29, 2025. [Doc. 1.] On that same day, the Clerk of Court issued summonses to all Defendants. [Docs. 4, 4-1, 4-2.]

On April 30, 2025, counsel for the SEC emailed Kyle Carney ("Carney"), an attorney who at that time was Alexander's defense counsel in a Collin County, Texas, lawsuit regarding the loan scheme described in the complaint (*see* Doc. 1 at ¶¶ 20-22), to inquire whether Carney would either accept service of process for Alexander or provide information regarding whom counsel for the SEC should contact regarding serving Alexander. (App. 2, 6 [Declaration of Jason J. Rose ("Rose Dec.") at ¶ 3; Rose Dec. Ex. A].)[1]. Carney did not respond. (App. 2 [Rose Dec. at ¶ 3].)

---

[1] All evidentiary citations are to the SEC's appendix filed in support of this motion ("App.") (Doc. 17), which is fully incorporated herein.

2

On May 2, 2025, Defendant Caedrynn E. Conner ("Conner"), through his counsel, waived service of a summons and the complaint. [Doc. 5.] And on June 30, 2025, Conner filed his answer to the complaint. [Doc. 9.]

On May 7, 2025, Defendant Robert D. Welsh ("Welsh"), through his counsel, waived service of a summons and the complaint. [Doc. 6.] And on June 26, 2025, Welsh filed his answer to the complaint. [Doc. 8.]

Since May 1, 2025, the SEC has attempted to effect service of process on Alexander by having him personally served by a process server, Cavalier Courier & Process Service ("Cavalier"). (App. 125 [Declaration of Delaney Wyatt ("Wyatt Dec.") at ¶ 2].)

On May 3, 2025, Cavalier attempted service at Alexander's last known address in Fort Worth, Texas. (App. 125 [Wyatt Dec. at ¶¶ 2-3].) An elderly male resident confirmed that he knew Alexander but stated that Alexander did not live there. (App. 125 [*Id*. at ¶ 3].) The resident refused to provide any further information regarding Alexander. *Id*.

Cavalier then conducted extensive research to locate other addresses at which Alexander may be residing. (App. 125 [*Id*. at ¶ 4].) The research revealed four additional addresses: (1) one in Austin, Texas; (2) two in Frisco, Texas; and (3) one in Allen, Texas. *Id*. (App. 125-26 [*Id*. at ¶ 4].)

On May 12, 2025, Cavalier attempted service at the Austin address. (App. 126 [*Id*. at ¶ 5].) A leasing agent confirmed that Alexander had moved out of the apartment complex in 2024, but did not have a forwarding address for him. *Id*.

On May 17, 2025, Cavalier attempted service at the first Frisco address. (App. 126 [*Id*. at ¶ 6].) The leasing office had no record of Alexander living there. *Id*. On June 28, 2025, Cavalier returned to that address to inquire whether a possible roommate of Alexander's lived in the

3

apartment complex. *Id*. A leasing agent confirmed that the possible roommate had previously lived there, but did not have a forwarding address for her. *Id*.

On May 23, 2025, Cavalier attempted service at the second Frisco address. (App. 126 [*Id*. at ¶ 7].) A female resident stated that Alexander did not live there, but would not provide any further information. *Id*.

On June 7, 2025 and June 10, 2025, Cavalier attempted service at the Allen address. (App. 126 [*Id*. at ¶ 8].) The property manager stated that they had no record of Alexander living there. *Id*. On July 10, 2025, Cavalier returned to this address to inquire whether Alexander's possible roommate lived there. *Id*. But the leasing office had no record of her either. *Id*.

On July 17, 2025, the SEC filed an Unopposed Motion for Extension of Time to Effect Service of Process on Alexander. [Doc. 10.] On July 29, 2025, the Court granted the motion and ordered the SEC to either serve Alexander, or inform the Court why it was unable to do so, by October 26, 2025. [Doc. 12.]

Cavalier then conducted additional extensive research. (App. 126 [Wyatt Dec. at ¶ 9].) Social media posts indicated that Alexander and his possible roommate might be traveling together and staying in temporary housing. *Id*. Social media posts and license plate scans revealed three additional addresses around Miami, Florida. *Id*.

On four separate occasions, between July 17, 2025 and August 8, 2025, Cavalier attempted service at the first Miami address. (App. 126 [*Id*. at ¶ 10].) Additionally, Cavalier conducted surveillance at this location. *Id*. On July 19, 2025, Cavalier spoke with a manager at the hotel who stated that neither Alexander nor his possible roommate was listed as a current guest. *Id*.

Between August 5, 2025 and August 8, 2025, Cavalier attempted service three times at the second Miami address. (App. 126 [*Id*. at ¶ 11].) Cavalier also conducted surveillance at this

4

location. (App. 126-27 [*Id*. at ¶ 11].) Front desk staff stated that they could neither confirm nor deny whether Alexander or his possible roommate were current guests. *Id*. Other hotel staff members told Cavalier that they did not recognize Alexander or his possible roommate. *Id*.

On September 3, 2025, Cavalier attempted service at the third Miami address. (App. 127 [*Id*. at ¶ 12].) The head of security told Cavalier that neither Alexander or his possible roommate was listed as a current guest or resident. *Id*.

Cavalier then conducted further extensive research, which identified a possible residential address in Princeton, North Carolina. (App. 127 [*Id*. at ¶ 13].)

On October 6, 2025, Cavalier attempted service at that location. (App. 127 [*Id*. at ¶ 14].) Although property records indicated that the home was owned by the husband of Alexander's possible roommate's mother, a male resident stated that he had no knowledge of Alexander, his possible roommate, or his possible roommate's mother. *Id*.

On October 20, 2025, counsel for the SEC emailed Steven Goodspeed ("Goodspeed"), counsel for Alexander's pastor, asking if his client had information regarding Alexander's current location. (App. 2, 8-9 [Rose Dec. at ¶ 4; Rose Dec. Ex. B].) Goodspeed replied that his client did not know Alexander's current location but did provide two email addresses for Alexander: maestrok12@gmail.com and ken.a@axiomvanguard.com. *Id*.

On October 20, 2025, counsel for the SEC sent emails to these addresses using the RPost registered email service, which attached copies of the complaint and summons and asked Alexander to provide his counsel's contact information or to respond directly to counsel for the SEC if he were not represented. (App. 2, 12, 14 [Rose Dec. at ¶ 5; Rose Dec. Exs. C, D].) On October 20, 2025, RPost returned receipts showing that the email sent to maestrok12@gmail.com had been delivered and opened but that the email to ken.a@axiomvanguard.com was not delivered. (App. 2, 16-17, 19-20 [Rose Dec. at ¶ 5; Rose

5

Dec. Exs. E, F].) Alexander did not respond to the email sent to maestrok12@gmail.com. (App. 2 [Rose Dec. at ¶ 5].)

During the SEC's investigation that preceded the filing of this lawsuit, the SEC's investigative staff obtained emails and other documents demonstrating that kenw.alexander@gmail.com and ken@vanguardhg.com were email addresses belonging to Alexander. (App. 3, 24-26, 28-30 [Rose Dec. at ¶ 7; Rose Dec. Exs. H, I].) On October 21, 2025, counsel for the SEC sent emails using RPost to Alexander at kenw.alexander@gmail.com and ken@vanguardhg.com, which attached copies of the complaint and summons and asked Alexander to provide his counsel's contact information or to respond directly to counsel for the SEC if he were not represented. (App. 3, 32, 34 [Rose Dec. at ¶ 8; Rose Dec. Exs. J, K].) On October 21, 2025, RPost returned receipts showing that the email sent to kenw.alexander@gmail.com had been delivered and opened but that the email to ken@vanguardhg.com was not delivered. (App. 3, 36-37, 39-40 [Rose Dec. at ¶ 8; Rose Dec. Exs. L, M].) Alexander did not respond to the email sent to kenw.alexander@gmail.com. (App. 3 [Rose Dec. at ¶ 8].)

On October 21, 2025, counsel for the SEC emailed Bill Richmond ("Richmond") and Bobby Hawkins ("Hawkins")—lawyers who have defended Alexander in numerous lawsuits and through whom a Dallas County, Texas, judge on September 30, 2024 ordered substituted service on Alexander—inquiring whether they represented Alexander in this matter and, if not, whether they would provide contact information for Alexander or his counsel. (App. 3-4, 42-118, 120-121, 123 [Rose Dec. at ¶ 9; Rose Dec. Exs. N, O, P].) On October 22, 2025, Hawkins responded that he and Richmond did not represent Alexander in this matter and that they did not have his current contact information. (App. 4, 123 [Rose Dec. at ¶ 9; Rose Dec. Ex. P].) Hawkins also

stated that he believed that Alexander was most recently represented by counsel in the Collin, County, Texas lawsuit. *Id.*[2]

Alexander's residence is currently unknown to the SEC and its counsel and, despite the diligent efforts described above, the SEC and its counsel have been unable to locate Alexander. (App. 4 [Rose Dec. at ¶ 10].)

<u>Argument</u>

1. **Alternative Service of Process**

Federal Rule of Civil Procedure 4(e)(1) permits service upon an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* FED. R. CIV. P. 4(e)(1). Texas law allows service to be made by delivering the citation and petition to the defendant in person, or by mailing the citation and petition to the defendant by registered or certified mail. TEX. R. CIV. P. 106(a)(1), 106(a)(2). Upon a showing that personal service has been unsuccessful, Texas law permits service by "any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give the defendant notice of the suit." TEX. R. CIV. P. 106(b)(2). Texas law provides that substituted service can be authorized in such as circumstance upon a sworn statement "listing any location where the defendant can probably be found …." TEX. R. CIV. P. 106(b); *see also State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 298-99 (Tex. 1993) ("Upon receipt of an affidavit satisfying Rule 106(b), the trial court may authorize substituted service which, shown from the affidavit or other evidence, is reasonably calculated to provide notice.") (footnote omitted).

---

[2] On October 20, 2025, counsel for the SEC emailed Carney a second time, asking Carney to confirm whether he represented Alexander in this matter and, if not, to provide contact information for Alexander or his counsel. (App. 3, 22 [Rose Dec. at ¶ 6; Rose Dec. Ex. G].) Carney did not respond. (App. 3 [Rose Dec. at ¶ 6].)

Despite the diligent efforts detailed above, the SEC has not been able to ascertain where Alexander "can probably be found." However, a plaintiff in this situation "is not without recourse." *Rock Island Auction Co. v. Dean,* No. 3:23-cv-2642-S-BN, 2024 WL 1837970, at *5 (N.D. Tex. Apr. 26, 2024). Texas Rule of Civil Procedure 109 provides, in relevant part:

> When a party to a suit, his agent or attorney, shall make oath that the residence of any party defendant is unknown to affiant, and to such party when the affidavit is made by his agent or attorney, or that such defendant is a transient person, and that after due diligence such party and the affiant have been unable to locate the whereabouts of such defendant, or that such defendant is absent from or is a nonresident of the State, and that the party applying for the citation has attempted to obtain personal service of nonresident notice as provided for in Rule 108, but has been unable to do so, the clerk shall issue citation for such defendant for service by publication.

TEX. R. CIV. P. 109.

Texas courts have stated the following requirements for an affidavit sufficient for Rule 109:

> (1) A party or his attorney shall make oath that (2) the Residence of any party defendant is unknown to affiant (and to such party where the affidavit is made by his attorney), or that such defendant is a transient person, (3) AND that after due diligence such party and the affiant have been unable to locate the whereabouts of such defendant, (4) or that such defendant is absent from or is a non-resident of the State, and that the party applying for the citation has attempted to obtain personal service of nonresident notice as provided for in Rule 108, but has been unable to do so. The clerk shall then issue citation for such defendant for service by publication.

*Rock Island*, 2024 WL 1837970, at *5 (quoting *Leithold v. Plass*, 488 S.W.2d 159, 164 (Tex. Civ. App. – Houston [14th Dist.] 1972, writ ref'd n.r.e.).

Additionally, Texas Rule of Civil Procedure 109a provides that "[w]henever citation by publication is authorized, the court may, on motion, prescribe a different method of substituted service, if the court finds, and so recites in its order, that the method so prescribed would be as likely as publication to give defendant actual notice." TEX. R. CIV. P. 109a. "[A] 109a order authorizing a method of substituted service other than publication could authorize service by the

8

very same method as a 106 order authorizing substituted service." *Rock Island*, 2024 WL 1837970, at *5 (quoting *In Int. of E.D.*, 553 S.W.3d 101, 105 (Tex. App. – Fort Worth 2018, no pet.).

Email is one of the manners of substituted service specifically named in Rule 106(b)(2) as a method a court may authorize when a sworn statement or other evidence shows it "will be reasonably effective to give the defendant notice of the suit." TEX. R. CIV. P. 106(b)(2). Before granting a motion for alternative service by email, "[c]ourts have generally required that plaintiffs provide some evidence of the email address having been recently used or send 'test emails' to find if the email addresses would lead to emails 'bouncing back' as undeliverable." *United States ex rel. Proctor v. Next Health LLC*, No. 4:17-cv-ALM-KPJ, 2023 WL 4153144, at *4 (E.D. Tex. 2023) (Johnson, Mag. J.) (internal citations omitted). Emails that do not "bounce back" are presumed to have been delivered. *Vega v. Arendal S. de R.L. de C.V.*, No. 1:21-cv-69, 2024 WL 150222, at *6 (E.D. Tex. Jan. 12, 2024).

In the present case, the SEC has located, and sent test emails via RPost, a registered email service, to four of Alexander's known email addresses. RPost confirmed that the emails sent to maestrok12@gmail.com and kenw.alexander@gmail.com were delivered and opened, establishing that these email addresses are currently in use. The current use of these email addresses demonstrates that alternative service by email would be as likely as publication to give Alexander actual notice of this lawsuit. *See, e.g., SEC v. Plummer*, No. 3:21-cv-2331-B, 2022 WL 1643958, at *2 (N.D. Tex May 23, 2022) (authorizing email service when registered email service demonstrated emails were delivered and opened); *Viahart, LLC v. Does 1-73*, No. 6:18-cv-604-RWS-KNM, 2020 WL 10692890, at *4 (E.D. Tex. June 17, 2020) (Mitchell, Mag. J.) (authorizing email service when test emails were not returned undeliverable); *Selippos Tech., Ltd. v. First Mountain Bancorp*, No. 4:12-cv-01508, 2013 WL 1181469, at *3 (S.D. Tex. Mar.

20, 2013) (collecting cases authorizing email service upon showing of unsuccessful personal service efforts and recent use of email address).

Accordingly, the SEC requests that the Court authorize alternative service on Alexander by emailing the summons and complaint to maestrok12@gmail.com and kenw.alexander@gmail.com.

2. **Extension of Time to Effect Service of Process**

Pursuant to Federal Rule of Civil Procedure 4(m), the SEC had at least until July 28, 2025 (90 days after the complaint was filed) to serve Alexander. The rule also provides that "if the plaintiff shows good cause for the failure [to effect service within 90 days], the court must extend the time for service for an appropriate period." *Id*. Good cause under Rule 4(m) requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (quoting *Winters v. Teledyne Movible Offshore, Inc*, 776 F.2d 1304, 1306 (5th Cir.1985)). "Additionally, some 'showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required'" *Id*.

Moreover, "[e]ven if the plaintiff lacks good cause, the court has discretionary power to extend the time for service." *Millan v. USAA Gen. Indem. Co.,* 546 F.3d 321, 325 (5th Cir. 2008). "A discretionary extension may be warranted, 'for example, ... if the defendant is evading service or conceals a defect in attempted service.'" *Id.* (quoting FED. R. CIV. P. 4(m) advisory committee's note (1993)).

On July 17, 2025, the SEC filed an Unopposed Motion for Extension of Time to Effect Service of Process on Alexander. And on July 29, 2025, the Court granted the motion and

ordered the SEC to either serve Alexander, or inform the Court why it was unable to do so, by October 26, 2025.

As detailed above, good cause exists for a second extension of time to serve Alexander. Since the Court granted the first extension, Cavalier has conducted extensive research, engaged in surveillance, and attempted to serve Alexander at four locations in two states. *See SEC v. Shehyn*, No. 04-cv-2003, 2005 WL 2990643, at *3 (S.D.N.Y. Nov. 7, 2005) (noting that "numerous cases ... have found 'good cause' when the defendant's whereabouts are unknown or otherwise difficult to discern"). Here, it appears likely that Alexander is trying to evade service of process. Alexander's and his counsel Carney's failure to respond to multiple emails regarding this lawsuit, the facts supporting the order authorizing substituted service on Alexander in the Dallas, County, Texas lawsuit, and Cavalier's numerous unsuccessful attempts to personally serve Alexander despite extensive research and surveillance, support such an inference. In such cases, courts have held that additional time is warranted. *See Hendry v. Schneider*, 116 F.3d 446, 449 (10th Cir. 1997); *see also Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 427 (E.D.N.Y. 2012) (plaintiff's substantial efforts to serve defendant who was plausibly evading service demonstrated good cause).

Accordingly, should the Court grant the SEC's motion for alternative service, the SEC requests that the Court grant it an additional period of 10 days from the date of its ruling to serve Alexander by email. Alternatively, should the Court deny the SEC's motion for alternative service, the SEC requests that the Court grant it an additional period of 90 days from the date of its ruling to continue its efforts to locate and personally serve Alexander.

## Conclusion

For the reasons discussed above, the SEC asks that the Court enter an order: (1) authorizing alternative service on Alexander by emailing the summons and complaint to

maestrok12@gmail.com and kenw.alexander@gmail.com; and (2) granting an additional period of 10 days from the date of its ruling to serve Alexander by email. Alternatively, the SEC asks that the Court enter an order granting an additional period of 90 days from the date of its ruling to personally serve Alexander. The SEC also asks that the Court grant it such further relief to which it may be entitled.

Date: October 24, 2025

Respectfully submitted,

/s/ *Jason J. Rose*
JASON J. ROSE
Texas Bar No. 24007946
SECURITIES AND EXCHANGE
COMMISSION
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, Texas 76102
(817) 978-1408 (jjr)
(817) 978-4927 (facsimile)
rosej@sec.gov

ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION

**CERTIFICATE OF CONFERENCE**

On October 23, 2025, in compliance with Local Rule CV-7(h), I conferred with counsel for Defendants Robert D. Welsh and Caedrynn E. Conner who stated that their clients are unopposed to this motion and the relief requested herein.

/s/ *Jason J. Rose*
Jason J. Rose

**CERTIFICATE OF SERVICE**

On October 24, 2025, I caused the foregoing to be electronically filed with the Clerk of Court for the Eastern District of Texas, Sherman Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Jason J. Rose*
Jason J. Rose